| | |
|---|---|
| JORDAN TO,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>US BANCORP d/b/a US BANK, and U.S. BANK NATIONAL ASSOCIATION,<br><br>　　　　　　　　Defendants. | Civil No. 08-5979 (JRT/JJK)<br><br>**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Daniel E. Warner, **WARNER LAW OFFICE**, 5774 Blackshire Path, Inver Grove Heights, MN 55076, for plaintiff.

Susan E. Ellingstad and David W. Asp, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401-2179, for defendants.

On November 12, 2008, plaintiff Jordan To brought this action against defendants U.S. Bancorp and U.S. Bank National Association (collectively, "U.S. Bank"), alleging claims under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.*, and the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301 *et seq.* The case is before the Court on U.S. Bank's motion for summary judgment. For the reasons discussed below, the Court grants U.S. Bank's motion.

**BACKGROUND**

From March 2007 to August 20, 2008, defendant U.S. Bank employed plaintiff Jordan To as a Senior Research Clerk. (To Dep. Tr. at 16, Ellingstad Aff. Ex. 8, Docket

No. 17.) To received a copy of U.S. Bank's employee handbook and participated in U.S. Bank's employee orientation regarding U.S. Bank's employment policies. (*Id.* at 59.) Under a policy entitled "Reporting Absences," the handbook states:

> You are expected to report all absences yourself, . . . as soon as practicable after you become aware of the need for the absence. You must speak directly to your manager or supervisor and follow all reporting procedures required by the department. You may not report an absence by leaving a voice mail, sending email, or telling your co-workers, unless your supervisor or manager specifically approves reporting absences in one of these manners. . . . Please note that contacting the U.S. Bank Employee Service Center or Human Resources does not satisfy the requirement to contact your supervisor directly to notify him or her that you will be absent, even if you are using or applying for . . . Family Medical Leave Act (FMLA) time.

(U.S. Bank Policies & Programs at 14, Ellingstad Aff. Ex. 9, Docket No. 17.) Under a provision entitled "Job Abandonment," the handbook states:

> If you remain absent from work for two (2) consecutive work days and fail to report the absence directly to your manager or supervisor, absent extenuating circumstances, you may be assumed to have voluntarily abandoned your job. Contacting the U.S. Bank Employee Service Center or your Human Resources representative does not satisfy the requirement to contact your manager directly to notify him or her that you will be absent, even if you are using or applying for . . . FMLA time.

(*Id.* at 15.)

In October 2007, To enlisted in the Minnesota National Guard and, in early 2008, To received orders to attend National Guard training at Fort Benning, Georgia. Although To was originally scheduled to attend training from April 20, 2008 to July 10, 2008, those orders were later amended to extend the end of his training to July 24 and then to August 1. (To Dep. Tr. at 24-26, Ellingstad Aff. Ex. 8; *id.* Ex. 2, Docket No. 17.) On

July 29, To sent an e-mail to Jill Friedges,[1] who had been To's immediate supervisor (but who had since been promoted), stating:

> I am still currently down at Ft. Benning, GA and not sure honestly when I will be back in Minnesota. I am at the Headquarters Holding area. The people here and my unit back in MN are still deciding where and what to do with me in the meantime. The Headquarters number here is 706-545-3359 if you have any questions or concerns.

(*Id.* Ex. 3.)

On August 4, 2008, after Friedges had consulted with Karen Dahlstrom, a U.S. Bank Human Resources Generalist, and Sandi Boller, U.S. Bank's "specialist" about military leave, To participated in a conference call with his manager, Jeff O'Neill and O'Neill's boss, Kristen Cornelius, to discuss To's return from military leave. (To Dep. Tr. at 35, Ellingstad Aff. Ex. 8, Docket No. 17.) To informed O'Neill and Cornelius that he "was feeling ill, [he] was feeling tired, lethargic, fatigue-ish, and [he] wouldn't be able to return to work that day, and [he] needed a few days to recuperate." (*Id.*) O'Neill and Cornelius informed To that he would need a doctor's note to be excused from work. (*Id.* at 35-36.) To testified at his deposition that he understood that he would be returning to U.S. Bank on August 4, that if he had not called in sick he would have returned to work, and that he would have reported to the same job in which he previously worked. (*Id.* at 37.)

---

[1] To also sent the e-mail to Jeff O'Neill, his manager at U.S. Bank, but To misspelled O'Neill's e-mail address and O'Neill did not receive the e-mail. (Ellingstad Aff. Ex. 12, Docket No. 17.) Regardless, Friedges received the e-mail and forwarded it to the appropriate parties.

From August 5 to August 8, To called O'Neill each day and left a voicemail stating that he was not feeling well and would not be coming to work. (O'Neill Dep. Tr. at 38-39, Ellingstad Aff. Ex. 12, Docket No. 17.) On August 6, To saw Dr. Daniel Rischall at Aspen Medical Group ("Aspen") in Minneapolis, Minnesota. (To Dep. Tr. at 37-38, Ellingstad Aff. Ex. 8, Docket No. 17.) Dr. Rischall tested To for pneumonia, but the test came back negative. (*Id.* at 39.) Dr. Rischall, however, provided To with a "Return to Work Slip," which stated that the cause of lost time was an "illness," and indicated that To would be absent from work from Monday, August 4 to Monday, August 11. (*Id.* Ex. 5.) Aspen faxed the "Return to Work Slip" to To's supervisor, Daniel Truong, and Truong confirmed that he received that note. (*See id.*)

To did not return to work on August 11. (Truong Dep. Tr. at 19, Ellingstad Aff. Ex. 16, Docket No. 17.) On that day, To spoke with Truong by telephone to inform him that he would not be returning to work that day because "he was not feeling well," and that To would fax another note to Truong indicating his return-to-work date. (*Id.* at 19, 28-29.) In the afternoon of August 11, Aspen faxed Truong a second Return to Work Slip, stating that the cause of lost time was an "illness," and that To would return to work on Monday, August 18. (*Id.* Ex. 6.) Truong provided copies of the second Return to Work Slip to O'Neill and Cornelius. (Truong Dep. Tr. at 19, Ellingstad Aff. Ex. 20, Docket No. 17.)

On August 14, O'Neill called To to inquire about his status. (To Dep. Tr. at 44, *id.* Ex. 8.) To testified that he told O'Neill that he "was still feeling the same symptoms, getting better, trying to get better," and that he would return to work "hopefully

[August 18,] the following week." (*Id.*)  To informed O'Neill that if he was not going to make it in, he "would definitely contact O'Neill and . . . have [his] doctor send a notice to him." (*Id.*)

On Monday, August 18, To failed to report for work. (*Id.* at 48, 63.)  To did not call O'Neill or anyone else at U.S. Bank on August 18.  To did not report for work on August 19, 20, or 21, and did not call or otherwise contact anyone from U.S. Bank on those dates. (*Id.* at 48.)  To testified, however, that he contacted Aspen on August 15 to complain of the same symptoms, and that Aspen informed To that it would fax a new Return to Work Slip requesting time off until Monday, August 25. (*Id.* at 45-46.)  U.S. Bank employees testified that they did not receive the third Return to Work Slip, which was dated August 15 (the "August 15 Return to Work Slip"). (*See* Truong Dep. Tr. at 32-33, Ellingstad Aff. Ex. 16, Docket No. 17.)  Karen Kreich, Aspen's clinic supervisor, states that based on the markings on the August 15 Return to Work Slip fax sheet and the clinic's procedures for faxing doctor's notes, someone (not identified in the affidavit) faxed the Return to Work Slip to U.S. Bank on August 15. (*See* Kreich Aff. ¶ 2, Docket No. 21.)  There is no evidence in the record suggesting that U.S. Bank received the August 15 fax.  Unlike the first two Return to Work slips, the August 15 Return to Work Slip states that the cause of lost time is "pneumonia." (Ellingstad Aff. Ex. 7, Docket No. 17.)

On August 20, after To failed to report for work or to report his absence, U.S. Bank determined that To had abandoned his job as outlined in the U.S. Bank employee policies. (Letter to To (Aug. 21, 2008), Ellingstad Aff. Ex. 1, Docket No. 17.)  On

August 21, U.S. Bank sent a letter to To notifying him that U.S. Bank was terminating his employment because he had abandoned his job. (*Id.*) On August 22, To received the termination letter. (To Dep. Tr. at 48-49, *id.* Ex. 8.) To called Truong on that day to ask why U.S. Bank had sent the termination letter, but Truong stated that he did not know about the letter or To's termination. (*Id.* at 49-50.) To asked Truong whether he had received the fax from the previous week, and Truong confirmed that he had. (*Id.*) It is not clear from To's testimony whether Truong was referring to the second Return to Work Slip (dated August 11, for August 11-18) or third Return to Work Slip (dated August 15, for August 18-25). Truong clarified at his deposition that he was referring to the second Return to Work Slip, and that he did not see the August 15 Return to Work Slip until the litigation began and his attorney showed it to him. (Truong Dep. Tr. at 32, Ellingstad Aff. Ex. 16, Docket No. 17.) During the phone call, Truong directed To to speak with O'Neill or Cornelius. (*Id.* at 26.)

On Monday, August 25, To contacted Dahlstrom by phone. (To Dep. Tr. at 50, 52, Ellingstad Aff. Ex. 8, Docket No. 17.) To explained to Dahlstrom that Aspen had faxed a doctor's note on August 15 excusing his absence for the week of August 18 to August 22, and noting a "return to work" date of August 25. (*Id.* at 52.) Dahlstrom responded that she had not received the August 15 Return to Work Slip fax, and the record does not show that anyone else from U.S. Bank received that fax. (*Id.* at 53; Dahlstrom Dep. Tr. at 65, Ellingstad Aff. Ex. 13, Docket No. 17.) However, Dahlstrom told To that if he provided her with a copy of the August 15 fax, U.S. Bank would re-evaluate the termination decision. (Dahlstrom Dep. Tr. at 66, Ellingstad Aff. Ex. 13,

- 6 -

Docket No. 17.) To did not provide Dahlstrom with a copy of the August 15 Return to Work Slip. Instead, To provided to U.S. Bank a new Return to Work Slip on August 26, dated the same day, which estimated that To would return to work on September 15. (Ellingstad Aff. Ex. 7, Docket No. 17.) Because To failed to provide the August 15 Return to Work Slip and because he did not follow U.S. Bank policies to call in his absences, Dahlstrom decided to allow the termination decision to stand. (Dahlstrom Dep. Tr. at 81-82, Ellingstad Aff. Ex. 13, Docket No. 17.)

To brought this action on November 13, 2008, (*see* Compl., Docket No. 1), and filed an amended complaint on March 3, 2009, (*see* Am. Compl., Docket No. 12). To brought claims against U.S. Bank for violations of the Family Medical Leave Act ("FMLA" or "the Act"), 29 U.S.C. §§ 2601 *et seq.*, and the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301 *et seq.* On December 1, 2009, U.S. Bank filed this motion for summary judgment. (Mot. for Summ. J., Docket No. 14.)

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. AUGUST 15 RETURN TO WORK SLIP AND THE KREICH AFFIDAVIT

Whether U.S. Bank received the August 15 Return to Work Slip is a fact issue that is particularly important to this motion, and the Court first addresses that question before turning to the merits of To's claims. To contends that he asked Aspen to fax the August 15 Return to Work Slip to U.S. Bank excusing him from work from August 18 to August 25. To submitted with his opposition brief an affidavit from Kreich, who supervises the Aspen clinic. (*See* Kreich Aff., Docket No. 21.) In her affidavit, Kreich attaches "a true and correct copy of the Return to Work slip" faxed from the clinic to U.S. Bank on August 15. (*Id.* ¶ 2.) Kreich explains that she only receives notifications after sending a fax if the fax did not go through (which apparently did not happen in this case). Kreich does not identify which member of the clinic sent the fax. (*Id.*) While it may be disputed whether the fax was **sent**, the facts appear undisputed that U.S. Bank did not **receive** the August 15 fax. Further, it is undisputed that Dahlstrom asked To to provide her with a copy of the August 15 fax, but that To did not do so.

U.S. Bank asks the Court to exclude the Kreich affidavit from consideration because To did not identify Kreich in Rule 26(a) disclosures. The Court does not reach that issue, because the Kreich affidavit is not probative of whether someone at Aspen

attempted to fax the August 15 Return to Work Slip. Simply put, Kreich testifies about the clinic's faxing procedures, opines that those procedures must have been followed, and concludes that someone (who remains unidentified) from Aspen faxed the August 15 Return to Work Slip to U.S. Bank. The affidavit demonstrates that Kreich lacks personal knowledge regarding whether someone at Aspen attempted to fax the document. Therefore, the conclusions she sets forth in her affidavit are too speculative to create a fact dispute about whether Aspen faxed the document to U.S. Bank. Consequently, the affidavit is also not probative of whether U.S. Bank received the August 15 fax.

Citing *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475-79 (7th Cir. 2009), To argues that "[t]he question of whether a fax proven to have been sent was actually received is a genuine issue of material fact in dispute. . . . Receipt can be reasonably inferred." (Mem. in Opp'n to Mot. for Summ. J. at 15, Docket No. 19.) As discussed above, however, To has not set forth facts "proving" that someone at Aspen faxed the August 15 Return to Work slip. *Laouini* is distinguishable on its facts in that respect: in *Laouini*, a facsimile confirmation generated by a fax machine was offered as evidence that the fax was sent. *Id.* at 476-77. By contrast, To's purported "proof" that the fax was sent is Kreich's affidavit, which does not create a fact dispute that an Aspen employee **sent** the fax. To has not "proven" that Aspen actually faxed the August 15 Return to Work Slip to U.S. Bank and, therefore, he is not entitled to an inference that U.S. Bank received the fax.

Moreover, To cannot point to any evidence that the August 15 Return to Work Slip would excuse his obligation under U.S. Bank handbook policies to call his

supervisor to report absences. Given those conclusions, the Court turns to the merits of To's claims.

## III. FMLA

Under the FMLA, an eligible employee is entitled to twelve weeks of unpaid leave during any twelve-month period for any of several reasons, including if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A serious health condition includes "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 C.F.R. § 825.113(a). "FMLA regulations require employees to provide adequate notice to their employers of the need to take [FMLA] leave." *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997); 29 C.F.R. § 825.302-03. "An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.302(d).

To appears to bring an "interference" claim and a "retaliation" claim under the FMLA. In an interference claim, "the employee alleges that an employer denied or interfered with his substantive rights under the FMLA." *Stallings v. Hussman Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006). In a retaliation claim, "the employee alleges that the employer discriminated against him for exercising his FMLA rights." *Id.*

### A. FMLA Interference Claim

To's amended complaint alleges that "Pursuant to the FMLA, [U.S. Bank] could not interfere with, restrain, or deny the exercise of or attempt to exercise, plaintiff's right to FMLA leave." (Am. Compl. ¶ 16, Docket No. 12.) U.S. Bank argues that To's interference claim fails because To did not provide adequate notice to U.S. Bank of his need for FMLA leave and because To did not comply with U.S. Bank's notice requirements for reporting his absence.

#### 1. Adequate Notice

"[T]he employer's duties [under the FMLA] are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 471 (8th Cir. 2007) (internal quotation marks omitted). "Because a serious health condition is a prerequisite for FMLA leave, an employee must provide information to the employer to suggest that his health condition could be serious." *Id.* at 472 (internal quotation marks omitted). Thus, "[t]he employer must be made aware that the absence is due to a serious illness so the employer can distinguish it from ordinary 'sick-days,' or even malingering, as a type of unusual and privileged absence." *Id.*

In evaluating whether an employer had adequate notice of an employee's serious medical health condition, the Court considers "whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723

(6th Cir. 2003) (internal quotation marks omitted). "What is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." *Id.* at 724 (alteration and internal quotation marks omitted).

To failed to "apprise [U.S. Bank] of the specifics of [his] health condition in a way that makes it reasonably plain that it [was] serious and [to] tell [his] employer that this is why [he would] be absent." *See Rask*, 509 F.3d at 474. To did not mention anything about an illness in his July 29 e-mail to Friedges, (Ellingstad Aff. Ex. 3, Docket No. 17), and in the August 4 conference call, he indicated only that he "was feeling ill . . . tired, lethargic, fatigue-ish . . . that [he] needed a few days to recuperate." (To Dep. Tr. at 35, Ellingstad Aff. Ex. 8, Docket No. 17.) In the August 11 call with Truong, To explained only that "he was not feeling well," and Truong testified that To "did not go into detail of what was his illness." (Truong Dep. Tr. at 29, 31, Ellingstad Aff. Ex. 16, Docket No. 17.) Further, the first two Return to Work Slips only indicate that To was out for an "illness," and do not specify the illness. (*See id.* Exs. 5-6.) Although the August 15 Return to Work Slip indicates that To was out with "pneumonia," (*see id.* Ex. 7), the record demonstrates that U.S. Bank did not receive that document.

Dahlstrom testified at her deposition that she considered the applicability of FMLA leave time to To's situation. (Dahlstrom Dep. Tr. at 22, Ellingstad Aff. Ex. 12, Docket No. 17.) Although Dahlstrom's statement may create a fact dispute about whether To gave U.S. Bank adequate notice of a serious health condition, it is not dispositive here for two reasons. First, there is no indication that U.S. Bank interfered

with or attempted to interfere with that leave. Second, as discussed below, the record reflects that To failed to comply with U.S. Bank policy for reporting absences.

### 2. Company Policies

Department of Labor regulations state that an employer may impose notice requirements on an employee seeking to take FMLA leave:

> An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, **absent unusual circumstances**. . . . An employee . . . may be required by an employer's policy to contact a specific individual. Unusual circumstances would include situations such as when an employee is unable to comply with the employer's policy that requests for leave should be made by contacting a specific number because on the day the employee needs to provide notice of his or her need for FMLA leave there is no one to answer the call-in number and the voice mail box is full. Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

29 C.F.R. § 825.302(d) (emphasis added). "Employers who enforce such policies by firing employees on FMLA leave for noncompliance do not violate the FMLA." *Bacon v. Hennepin County Med. Ctr.*, 550 F.3d 711, 715 (8th Cir. 2008). Moreover, "an employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005).

It is undisputed that To violated U.S. Bank's "Reporting Absences" policy and that the "Job Abandonment" provision applied. To admits that from August 18 to August 21, he did not speak directly with O'Neill or any other manager or supervisor to

- 13 -

report his absence. Thus, To did not satisfy the requirement that he "speak directly to [his] manager or supervisor" to report absences. Further, To "remain[ed] absent from work for two (2) consecutive work days and fail[ed] to report the absence directly to [his] manager or supervisor," and U.S. Bank was thus entitled to terminate his employment under the "Job Abandonment" provision. (*See* U.S. Bank Policies & Programs at 15, Ellingstad Aff. Ex. 9, Docket No. 17.)

There are no unusual circumstances that would justify To's failure to comply with those policies. To argues:

> A jury can infer that the Bank knew there were "extenuating circumstances" and no job abandonment, as the managers were aware that To was coming back from a military leave, was ill, had expressed his interest in keeping his job in several conversations and voicemails, had provided two doctor's notes seeking time off from work, and had made reasonable efforts to retain his job.

(Mem. in Opp'n to Mot. for Summ. J. at 17, Docket No. 19.) Those "extenuating circumstances" did not prevent To from complying with the direct reporting requirement during the first two weeks of August. To has not identified any change in circumstances that prevented him from complying with the direct reporting requirement thereafter.

U.S. Bank's policies explicitly state that the call-in requirement under the "Reporting Absences" policy and "Job Abandonment" provision applies even if an employee is requesting FMLA leave. (U.S. Bank Policies & Programs at 14, Ellingstad Aff. Ex. 9, Docket No. 17.) Because To "was terminated for failing to comply with [U.S. Bank's] call-in policy, and [because he] would have been terminated for doing so irrespective of whether these absences were related to FMLA leave," To's interference

claim cannot survive summary judgment. *See Bacon*, 550 F.3d at 714. Accordingly, the Court grants U.S. Bank's motion on To's FMLA interference claim.

### B. FMLA Retaliation Claim

The FMLA prohibits employers from retaliating against an employee for asserting rights under the Act. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006). The Court applies the *McDonnell Douglas* burden-shifting framework to FMLA retaliation claims. *See Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). First, "[t]o establish a prima facie case of FMLA retaliation, an employee must show that she engaged in activity protected under the [FMLA], that she suffered an adverse employment action by the employer, and that a causal connection existed between the employee's action and the adverse employment action." *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). "[E]vidence that gives rise to an inference of retaliatory motive on the part of the employer is sufficient to establish a causal link." *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (internal quotation marks omitted). "Second, once the employee establishes a prima facie case, the burden shifts to the employer to artic[ulate] a legitimate, nondiscriminatory reason for its actions." *Hite*, 446 F.3d at 865. "Finally, the burden shifts back to the employee to demonstrate that the employer's proffered reason is pretextual." *Id.* (internal quotation marks omitted).

Even assuming that To has established a *prima facie* case of retaliation – which U.S. Bank does not concede – To has not adduced evidence from which a reasonable trier of fact could conclude that U.S. Bank's purported legitimate reason for doing so was

- 15 -

pretextual.  U.S. Bank asserts that it terminated To's employment because To failed to comply with U.S. Bank absence-reporting policy and, in doing so, To had abandoned his job under the terms of the employee handbook.  To has not brought forth any evidence that U.S. Bank enforces those policies in a discriminatory manner or that To was terminated "because of his use of FMLA-qualifying leave."  (*See* Am. Compl. ¶ 17, Docket No. 12.)  Although To contends that he manifested no intent to abandon his job, his subjective intent is irrelevant in this context.  To did not comply with U.S. Bank policies, and his termination was appropriate under those policies.  Accordingly, the Court grants U.S. Bank's motion as to To's FMLA retaliation claims.

### III.  USERRA

USERRA provides that "any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits" of USERRA under certain conditions.  38 U.S.C. § 4312(a).  "In the case of a person whose period of service in the uniformed services was for more than 30 days but less than 181 days," "a person must give the employer notice of intent to return by submitting an application for reemployment with the employer not later than 14 days after the completion of the period of service[.]"  *Id.* § 4312(e)(1)(C).  Further, if an employer reemploys a person after a length of service of 31-180 days, the employer may not, for 180 days, discharge the employee without cause.  *Id.* § 4316(c).  The parties agree that To's length of service was more than 30 days but less than 181 days.

To alleges in the amended complaint that U.S. Bank failed to reemploy To in his previous position as required under § 4312(a), and, in the alternative, that U.S. Bank reemployed To but terminated him without cause within 180 days of his reemployment, in violation of § 4316(c).

### A. USERRA Claim for Failure to Reemploy

To's claim that U.S. Bank failed to reemploy him in his previous job as a Senior Research Clerk fails as a matter of law: the record demonstrates that To and U.S. Bank understood that To would be reemployed beginning August 4 when he was originally supposed to return to work. To's argument that there is a dispute of fact as to To's reemployment is difficult to comprehend and misconstrues the applicable law.

To argues that he was convalescing from an illness that he incurred while training at Fort Benning. "A person . . . convalescing from[] an illness or injury incurred in, or aggravated during, the performance of service in the uniformed services shall, at the end of the period that is necessary for the person to recover from such illness or injury, report to the person's employer," so long as that period does not exceed two years. 38 U.S.C. § 4312(e)(2)(A). The record, however, demonstrates that U.S. Bank was not aware that To was convalescing from an illness incurred while serving at Ft. Benning. In the conference call on August 4, To indicated that he felt ill and fatigued, but did not suggest that he incurred the illness during his service. Further, none of the Return to Work slips suggests that To incurred his illness during his service.

To also argues that, to the extent U.S. Bank contends that he did not "reapply" for his position, U.S. Bank could not have reemployed him. The facts belie that assertion. U.S. Bank, regardless of the existence of an application for reemployment, had reinstated and reemployed To and was expecting him to report for work. Were that not the case, it is unclear why To would contact his managers and supervisors during the relevant period to report his absence from his job. In the alternative, To argues that he applied for reemployment through his attorney on September 15, 2008, which was one month after U.S. Bank terminated him for failing to follow call-in procedures. September 15 was 45 days after To's term of service ended – 31 days after the deadline under 38 U.S.C. § 4312(e)(1)(C) to apply for reemployment. Moreover, To has not adduced **any** evidence of the illness from which he was recovering, other than one-word doctor's notes. *Cf. Erickson v. U.S. Postal Serv.*, 571 F.3d 1364, 1371 (Fed. Cir. 2009) ("Mr. Erickson has not adduced any evidence that he was hospitalized for or otherwise incapacitated by his service-connected injury.").[2] Accordingly, the Court grants U.S. Bank's motion as to To's USERRA reemployment claims.

### B. USERRA Claim for Termination Without Cause

To argues that U.S. Bank terminated his employment without cause, in violation of 38 U.S.C. § 4316(c). An employer has just cause to terminate an employee who does not comply with a known company policy. *See* 20 C.F.R. § 1002.248(a); *see also* S. Rep.

---

[2] To asks the Court to *sua sponte* grant him summary judgment on the reemployment claim. There is no fact dispute, however, that U.S. Bank reemployed To.

No. 103-158, at 58 (1993) ("During the period of immunity from removal except for just cause, unsatisfactory performance . . . might be just cause for dismissal, **as might frequent unexplained absences, depending upon the employer's policy or practice**." (emphasis added)). To does not dispute that he failed to contact anyone at U.S. Bank from August 18 to August 21, and only did so on August 22 after receiving his termination letter. Dahlstrom informed To that she would reconsider the termination decision if To provided her a copy of the August 15 fax excusing him from work from August 18 to August 25. To does not dispute that he did not provide Dahlstrom with a copy of the August 15 Return to Work Slip. Instead, To provided a new note dated August 26 excusing him until September 15. At that point, Dahlstrom decided to let the termination decision stand.

To also offers no evidence from which a reasonable trier of fact could find that U.S. Bank's purported legitimate reason for termination – failure to adhere to the employee handbook policies – was pretext. To's argument that the U.S. Bank policies handbook is not "black and white" is not persuasive. The handbook states that "You may not report an absence by leaving a voice mail, sending email, or telling your co-workers, **unless your supervisor or manager specifically approves absences in one of these manners**." (U.S. Bank Policies & Programs at 14, Ellingstad Aff. Ex. 9, Docket No. 19 (emphasis added).) There is no evidence in the record that any U.S. Bank manager or supervisor informed To that he did not have to call in to report his absence. To's argument that U.S. Bank modified the policy to require only a doctor's note is unavailing.

There is no indication that U.S. Bank informed To that a doctor's note was a sufficient means to report an absence.

Accordingly, the Court grants U.S. Bank's motion on the USERRA termination-without-cause claim.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendants U.S. Bancorp and U.S. Bank National Association's Motion for Summary Judgment [Docket No. 14] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 7, 2010            _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                  United States District Judge